JOHN HARBISON

*v.*

RICHARD HOUGHTON.

1. MORTGAGE — *what constitutes.* After a decree of foreclosure of a mortgage given to secure a loan of money, and a sale thereunder at which the mortgagee became the purchaser, the latter waived the payment of the money in redemption from the sale, and, before the time of redemption expired, under an understanding with the mortgagor to extend the time for the payment of the money, and to still hold the land as security, the mortgagee took a quitclaim deed therefor from the mortgagor, and gave him a bond for a reconveyance upon the payment at a certain time, beyond the statutory time for redemption, of a sum which was made up of the amount found due by the decree of foreclosure, with a heavy usurious interest, the bond providing that the time of payment of the money should be of the essence of that contract. *Held,* that the quitclaim deed and bond for reconveyance constituted a new mortgage, and not a sale and resale.

2. SAME — *effect of the new arrangement upon the rights of the mortgagee as a purchaser under the foreclosure.* The arrangement by which the mortgagee took the quitclaim deed from the mortgagor, and gave him back his bond for a reconveyance, canceled the certificate of purchase which the former had received at the sale on the decree of foreclosure, his equitable title obtained

thereby being merged in the legal title acquired by the deed, and he had then no right to a deed from the master, under the foreclosure.

3. SAME — *right of redemption of the mortgagor.* The mortgagee having obtained a deed from the master under the sale on foreclosure, after the statutory time for redemption therefrom had expired, notwithstanding the new arrangement, he commenced his action of ejectment against the mortgagor, to recover the premises ; and on bill filed by the latter to enjoin that suit, and to redeem, although the terms of payment as prescribed in the bond for reconveyance had not been complied with, it was *held,* as the new transaction was a mortgage, and the mortgagee having rescinded that agreement, the mortgagor had a right to redeem by paying what was equitably due.

4. SAME — *what amount should be paid on such redemption — of the usury.* The amount to be paid on such redemption, should be the amount of the decree on foreclosure with six per cent interest and costs, the usury which was reserved in the new arrangement being deducted.

5. INJUNCTION — *when it should be made perpetual.* When an injunction is granted to restrain the prosecution of an action of ejectment, upon the ground that the transaction out of which the plaintiff in the action derives title, was a mortgage, from which the defendant in the ejectment seeks in his bill to redeem, if the right of redemption is established, the injunction should be made perpetual, and it is error if the decree does not so direct.

WRIT OF ERROR to the Circuit Court of Tazewell county; the Hon. JAMES HARRIOTT, Judge, presiding.

A statement of the case will be found in the opinion of the court.

Mr. H. M. WEAD and Messrs. COHRS & IRELAND, for the plaintiff in error.

Mr. B. S. PRETTYMAN, for the defendant in error.

Mr. JUSTICE BREESE delivered the opinion of the Court:

Houghton brought an action of ejectment against Harbison, in the Tazewell Circuit Court, to recover the possession of certain premises then in the occupancy of Harbison, who filed a bill in chancery to enjoin proceedings in that suit, and prayed that he might be allowed to redeem the premises, and that Houghton be required to convey them to him, Harbison.

It appears from the bill and answer, proofs and exhibits, that Harbison had borrowed two sums of money of Houghton,

one of $800, and the other of $900, for which he had executed his notes on time, and also separate mortgages on the premises in dispute, which were the homestead of Harbison, who was the head of a family and residing thereon, without releasing the homestead. In the bill of complaint, it is alleged this money was loaned at usurious interest.

These moneys not being paid when due, Houghton, at the September Term, 1860, of the Tazewell Circuit Court, exhibited his bill in chancery to foreclose these mortgages, and on the tenth of that month, a decree of foreclosure, upon both mortgages, duly passed for the sum of $2,104.20, and it was decreed if this amount was not paid in ten days, the premises should be sold by the master in chancery. The ten days having elapsed, and the money not paid, the master in chancery, on the 30th of October thereafter, sold the premises to Houghton, he having bid therefor, the sum of $2,711.51, an amount in excess of the decree including costs and interest. The time of redemption would expire on the 29th of October, 1861.

Prior to this time, and on the 1st of July, 1861, Harbison informed Houghton of an arrangement he could make with one Ira Davenport, by which he could get the money with which to redeem the land, whereupon it is alleged, Houghton told Harbison he did not wish the premises redeemed, and did not wish the money, but only that the premises might remain as security for the same and interest thereon, and Harbison alleges, that Houghton proposed for that purpose that he, Harbison and wife, should execute to him a quitclaim deed for the premises, and take back an agreement for a reconveyance, which was done, no release of the homestead being made. The bond or writing for a reconveyance by Houghton, was in substance, that he, Houghton, agreed to sell Harbison the premises for $4,989.45, to be paid in installments (time and amount of installments particularly named) secured by notes for those amounts, to draw ten per cent interest per annum from maturity of each payment, payable annually, on the 30th of October of each year, on the whole sum from time to time remaining unpaid, and containing a provision that time was of the essence

of the condition, and also a provision that the bond should be forfeited upon the non-payment of any installment, and that Houghton might repossess and distrain for the amount unpaid as for rent, and that upon compliance by Harbison, Houghton and wife were to reconvey the premises to Harbison by a deed of quitclaim. This bond was dated July 1, 1861, and was executed simultaneously with the quitclaim deed from Harbison and wife to Houghton.

Harbison having suffered the time for redemption from the sale under the foreclosure decree to pass, Houghton took from the master in chancery, who sold the premises, a deed therefor, without the knowledge of Harbison, and without having paid the excess of his bid over and above the amount of the decree, and thereupon notified Harbison to leave the premises, and brought this action of ejectment to recover the possession, and refused Harbison the privilege of redeeming. Harbison alleges, that he tendered Houghton, on the 12th of November, 1863, the sum of $2,828.05, as the amount due him, with interest, on the foreclosure decree.

Houghton, in his answer, denies the tender — denies usury and denies that the quitclaim deed from Harbison to him and his bond to Harbison amounted to a mortgage — admits he refused to allow Harbison the right to redeem — alleges that the excess of his bid at the sale was paid to Harbison in his, Harbison's, notes, which were then given up to him.

Both parties were examined as witnesses in the cause. Houghton testified, that he bid off the premises at the sale, under the decree of foreclosure, for $2,711.51, and received a certificate of purchase; that the difference between his bid and the amount of the decree, with the interest and costs, was paid in notes held by him against Harbison; cannot tell the amount of the notes; never let Harbison have any moneys besides those mentioned in the two mortgages, except forty dollars, of which Harbison refunded seventeen dollars; let Harbison have some money when the quitclaim deed was made; can't tell within one hundred dollars how much; there were other transactions between them, had paid money that Harbison ought

to have paid, taxes and something else, can't tell what; thinks he paid debts due by Harbison, but can't tell amount or to whom; never let Harbison have any other money for the deed, except the loaned money secured by the two mortgages, except as stated; thinks he has paid taxes twice; paid costs of foreclosure; the consideration mentioned in the deed shows the whole amount paid, including advances; cannot tell how the interest was reckoned, the consideration in the deed shows the whole amount; when the sale was made, he let Harbison have his notes to make up the excess of his bid.

Harbison testified: At time of making quitclaim deed to Houghton, no consideration was paid; consideration was payments mentioned in the bond for deed, which were to run a number of years; never received any consideration for the deed, either before or since, except the $1,700 borrowed money, secured by the two mortgages, and interest thereon, and costs of foreclosure; Houghton never paid any money for excess of bid at sale, over. amount of decree and interest and costs; he had notes which I had given him for arrears of interest on the loaned money, and they were turned in for the excess; the interest on the mortgage notes was fifteen per cent, compounded every six months, and excess was paid in those notes, except one year's taxes paid by Houghton, and costs of foreclosure; can't recollect Houghton ever giving up the notes; amount specified in agreement for reconveyance was made up of amount of sale, and fifteen per cent interest upon the amount was added into the face of the notes, compounding the interest every six months at that rate, and then drawing ten per cent interest after maturity, and was so done to evade the usury laws; the interest was calculated upon that basis. Business was done at Delavan, Tazewell county, Illinois.

This being the material evidence in the cause, the Court pronounced the following decree:

That the sale made under said decree of foreclosure, and the deed made to Houghton by the master in chancery, dated January 14, 1862, under said decree, and the quitclaim deed, and the agreement for reconveyance, dated July 1, 1862, for

said premises, and the notes executed simultaneously therewith by Harbison to Houghton, be each and all set aside and held for naught; and that complainant pay to defendant the sum of $2,711.51, with interest thereon at the rate of ten per cent from October 30, 1860, and $161.07 taxes, and one-half the costs of this proceeding, within thirty days from the filing of this decree; and that in default thereof the master in chancery cause to be summoned six qualified jurors to appraise, upon oath, said premises, and if, in their opinion, the same can be divided without prejudice to the interests of the parties, they shall set off so much of said premises, including the dwelling-house, as they think shall be worth $1,000, as a homestead under the statute, and the residue of the premises, the master, after advertising, etc., shall proceed to sell, or so much as may be necessary to raise the sums aforesaid, with the interest aforesaid thereon, and the taxes aforesaid and interest thereon, and one-half the cost of this proceeding. And, should the jury report to the said master that they cannot divide said premises without injury to the interests of the parties, then defendant shall pay the plaintiff $1,000 in lieu of homestead, and the said master shall sell the whole of said premises, or so much thereof as may be necessary to raise said money, and out of the proceeds pay to said defendant said sum of $1,000, and of the residue so much as may be required to pay defendant said $2,711.51, and interest, and taxes, and one-half the costs as aforesaid — the sale to be for cash — and give certificate of purchase to the purchaser, and that defendant pay one-half the costs in this case.

From this decree Harbison prosecutes this writ of error, and assigns the following as errors:

The court erred in not granting the relief prayed for in the bill; in not deducting the illegal interest proved to have been contained in the bill; in rendering a decree for too great a sum in favor of complainant; in ordering the homestead right to be set off in the way and manner specified in the decree; in not making the injunction of the ejectment perpetual; in allowing $161.07 taxes as paid by Houghton, without proof; in render-

ing a decree for the amount bid at the former sale, instead of
ordering the land to be sold to satisfy the former decree; in
ordering payment of the decree in thirty days, with ten per
cent interest from the day of the former sale; in ordering
complainant to pay one-half the costs; in allowing usurious
interest contrary to the statute and the proof; in rendering a
decree for complainant.

It is not our purpose to notice all these errors in detail, but
to state briefly the view we hrve taken of the whole case on
the proofs; but, in the outset, we cannot but express our surprise
that a loan of $1,700 in 1859, at ten per cent per annum
interest, should amount, on the 1st of July, 1861 — being the
day on which Harbison and wife executed the quitclaim deed
to Houghton, and received back the bond of Houghtr, conditioned to reconvey on the payment of fo- thousand nine
hundred and eighty-nine dollars and forty-five cents ($4,989$\frac{45}{100}$)
— could amount to that sum without usurious interest being
exacted, and that compounded, as Harbison states in his testimony was done, and charged against him by Houghton. In
no other way could the debt have increased so fast; as it is
clearly proved no other money was loaned to Harbison, except
the sum of $1,700 at ten per cent interest, payable annually.
Houghton, in his testimony, does not give any satisfactory
explanation of the matter, or seem to know, or was unwilling
to state the real facts. We think there can be no other reasonable solution of it, than by holding that usurious interest was
exacted, as stated by Harbison in his testimony.

We deem the fact of usury well established by Harbison's
testimony, and by all the strong facts of the case. The court,
in its decree, should have found the extent of the usury, and
made deduction accordingly. For not doing so, the decree in
this respect was erroneous. It is also erroneous in this, that
the court allowed Houghton $161 for taxes, without any proof,
that we can discover, that he had paid that amount, or any
amount, a fact so easy of proof, rnat not being proved is a fair
presumption that he did not pay them.

The first important consideration is, what was the effect of

the quitclaim deed of Harbison and the bond of Houghton to reconvey? Houghton insists, they do not amount to a mortgage. This court has decided they do, and that is the doctrine of this court now. *Delahay* v. *McConnell*, 4 Scam. 157; *Coates* v. *Woodworth*, 13 Ill. 654; *Miller* v. *Thomas*, 14 id. 428; *Tillson* v. *Moulton*, 23 id. 648. And once a mortgage always a mortgage. This being so, the court should have allowed Harbison to redeem by paying the amount due on the decree of September, 1860, with interest at six per cent. The arrangement by which Houghton took the quitclaim deed from Harbison, and gave him back his bond, canceled the certificate of sale under the decree, and he had no right to receive the deed from the master. His equitable title obtained by this purchase merged, in the arrangement made, in the legal title acquired by the deed from Harbison. The transaction thus amounted to a new mortgage; and, Houghton having rescinded the agreement, Harbison has a right to redeem by paying what is equitably due, and that is, the amount of the decree on foreclosure with six per cent interest and costs. If the premises are not redeemed by Harbison in twenty days from the time of filing this opinion, then the master in chancery of Tazewell county will sell the premises in pursuance of the statute.

The court further erred, in not making the injunction perpetual. For the reasons given, the decree must be reversed.

*Decree reversed.*